

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Dear Mr. Baker:                    Opinion No. O-5279

Re: Authority of Board of Control
to use funds transferred un-
der the provisions of Senate
Bill No. 259, 48th Legisla-
ture, for the purchase of feed
for dairy and beef cattle, et
cetera.

Your letter of April 30, 1943, requests the opinion
of this department upon certain questions with regard to the
use that may be made by the Board of Control of funds trans-
ferred from one eleemosynary institution to another under the
provisions of S. B. No. 259, Acts Regular Session, 48th Legis-
lature. Your questions are:

"1. Can funds so transferred be used for
the purchase of feed for dairy and beef cattle
and other stock?

"2. Can funds so transferred be used for
the purchase of garden and farm seed?"

Senate Bill No. 259 reads as follows:

"AN ACT authorizing the State Board of Control
to transfer any balance in any fund of any eleemosy-
nary institution in Texas to another, with the con-
sent of the Governor, where such funds are not need-
ed in the institution from which either or all of
said funds may be transferred, providing that the Act
shall be effective for the current fiscal year and
for each fiscal year of the next biennium; authoriz-

Honorable Weaver H. Baker, Chairman - page 2

ing the Comptroller of Public Accounts to make transfer of said sums from one institution to another upon written request therefor by the Board of Control concurred in by the Governor; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. The State Board of Control, by and with the consent of the Governor, is hereby authorized to transfer any balance in any fund appropriated, or local funds of any one eleemosynary institution, to another, where such fund or funds are not needed in the institution from which either or all of said funds may be transferred; provided however, this Act shall not be effective after August 31, 1945, but such Act is meant to authorize such transfer for the current fiscal year, and for each fiscal year of the next biennium; and further provided, no fund or funds for new construction appropriated for any eleemosynary institutions will ever be transferred from one institution to another; and further provided, that no salary of any employee will be supplemented by the addition of any sum or sums of money above what is appropriated, and no new position or positions will be created and paid for by the use of any such fund or funds, and none of such fund or funds so transferred will be used for any purpose other than purchase of food, clothing and medicine.

"Sec. 2. The State Comptroller of Public Accounts is hereby directed to make transfer of the sum, or sums, from either or all of the aforesaid accounts from one institution to another, upon written request therefor by the State Board of Control concurred in by the Governor.

"Sec. 3. The fact there may be balances existing in the appropriated or local funds of the eleemosynary institutions that may be transferred by the State Board of Control in the manner provided in this Act, thus obviating the necessity for the request and issuance of a deficiency warrant, upon which there is always a pecuniary loss to the State; and the further fact that the reallocation of such funds would probably result in the eleemosynary institutions being maintained during the fiscal years covered by this Act without a deficiency warrant, and the further fact that unless such authority

Honorable Weaver M. Baker, Chairman - page 3

is granted, an emergency appropriation will be necessary for maintaining such institutions, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said rule is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

The transmission of ideas through the medium of the written word is fraught with difficulty, for words frequently do not convey a single and exact meaning. It is commonly required that those who seek the precise thought which the author of a written word intended must select that shade of meaning which the context suggests.

This is the basis for the rule of statutory construction, "Noscitur a sociis" -- the meaning of words is known from the words with which they are associated. It is this principle of construction which must be applied in ascertaining the meaning of the word "food" in the Act under consideration.

"Food", standing alone, may have the broad and general meaning which includes those materials which are consumed by humans and animals for the nourishment of their bodies. The word, however, is frequently used to refer only to materials for human consumption.

To determine which meaning was intended in the Act here involved, we may and should look to the words with which "food" is immediately associated in the Act.

The Act lists the purposes for which transferred funds may be expended as "food, clothing and medicine". Applying the principle of statutory construction above referred to, it is obvious from the association of the word "food" with the word "clothing" that the intent was to limit the expenditure of transferred funds to food for human consumption.

A second question is involved: Feed for beef cattle and similar stock, and garden and farm seed produce through the processes of nature food for human consumption. And certain garden and farm feed (for example corn and beans) are

themselves suitable food for human consumption. But the Act authorizes only the purchase of "food", and it is clear that the article purchased must be suitable and intended for human consumption. This language can not be construed as allowing the purchase of articles which are not food for human consumption, but which may produce food for human consumption; nor can it be interpreted as permitting the purchase of that which is food for human consumption, but which the purchaser does not intend to use for that purpose.

Your questions are answered in the negative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

by

R. W. Fairchild
Assistant

APPROVED JUN 15 1943

ATTORNEY GENERAL OF TEXAS

RWF-KR

APPROVED
OPINION
COMMITTEE
BY CHAIRMAN

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE